<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY REINHOLD BROWN,<br><br>                     Plaintiff,<br><br>     v.<br><br>HSBC,<br><br>                     Defendant. | Civil Action No. 24-8025 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant HSBC Technology & Services, Inc.'s[1] ("HSBC" or "Defendant") Motion to Dismiss (ECF No. 7) Plaintiff Mary Reinhold Brown's ("Plaintiff") Complaint (ECF No. 1-1). Plaintiff opposed (ECF No. 10), and Defendant replied (ECF No. 11). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendant's Motion to Dismiss is granted.

**I.    <u>BACKGROUND</u>**

    **A.    Factual Background**[2]

Plaintiff worked for HSBC for ten years, last serving as Managing Director and Head of Compliance for retail in the United States. (Compl. ¶ 3, ECF No. 1-1.) As part of her employment,

---

[1] The Defendant was improperly pled as "HSBC" in the Complaint. (Def.'s Moving Br. 1, ECF No. 7-1; Compl. 1, ECF No. 1-1.)

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff and HSBC agreed to a compensation package that included "deferred shares," which vested over a three-year period and were governed by the HSBC Share Plan 2011 (the "Plan"). (*Id.* ¶¶ 5, 17.) Over the past few years, HSBC began to reduce the size of its retail business, and there was a "significant reduction" in Plaintiff's compliance team. (*Id.* ¶ 6.) In fact, "the HSBC retail mass market business that [Plaintiff] supported was sold." (*Id.* ¶ 23.) HSBC management also "made clear" that there was "no position in the United States for [Plaintiff]." (*Id.* ¶ 24.)

Plaintiff sought and obtained new employment, giving HSBC "approximately three and one-half weeks['] notice" of her departure. (*Id.* ¶¶ 7-8.) Plaintiff's manager, Christine Lowthian ("Lowthian"), approved Plaintiff's resignation and stated that she left HSBC "in good standing." (*Id.* ¶¶ 9, 14, 27.) When Plaintiff asked about her deferred shares, Lowthian told her that "since she left HSBC in good standing, her deferred shares would be untouched and remain with [her]." (*Id.* ¶¶ 10, 16, 28.)

According to the Plan, as a general rule, "an [a]ward which has not [v]ested will lapse on the date [an enrolled employee] ceases to be an [e]mployee." (Def.'s Moving Br., Ex. A ("Ex. A") § 5.1.1, ECF No. 7-2.)[3] An award of shares *will* vest with a participant who is no longer an employee if the Plan's "Good leavers" provision applies (the "Good Leavers Provision"), which provides exceptions to the general rule for employees who leave under the following conditions:

> (i)   ill-health, injury or disability, as established to the satisfaction of the Directors;
> (ii)  retirement with the agreement of the Participant's employer and approval of the Directors;
> (iii) the Participant's employing company ceasing to be a Member of the Group;

---

[3] Plaintiff does not dispute the validity of the Plan or Defendant's exhibit of the Plan attached to its moving brief. She also references specific provisions of the Plan in her Complaint and brief in opposition. (*See generally* Compl.; Pl.'s Opp'n Br., ECF No. 10.) The Court, therefore, cites to Ex. A when referring to the Plan.

2

  (iv) a transfer of the undertaking, or the part of the undertaking, in which the Participant works to a person which is not a Member of the Group;
  (v) redundancy with the agreement of the Participant's employer and approval of the Directors; and
  (vi) any other reason, if the Directors so decide in any particular case.

(*Id.* § 5.2.1.)

### B. Procedural Background

Plaintiff filed her Complaint in the Superior Court of New Jersey on May 28, 2024 (ECF No. 1-1), and HSBC timely removed the case to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332 (ECF No. 1). The Complaint brings six counts against Defendant: (1) breach of contract ("Count One"); (2) violation of the New Jersey Wage Payment Law ("WPL") ("Count Two"); (3) unjust enrichment ("Count Three"); (4) promissory estoppel ("Count Four"); (5) fraudulent misrepresentation ("Count Five"); and (6) negligent misrepresentation ("Count Six"). (*See generally* Compl.) Defendant subsequently moved to dismiss. (Def.'s Moving Br., ECF No. 7-1.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 10), and Defendant replied (Def.'s Reply Br., ECF No. 11).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[4] "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must

---

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.   DISCUSSION[5]

Defendant moves to dismiss Plaintiff's Complaint in its entirety. (*See generally* Def.'s Moving Br.) The Court addresses each argument in turn.

#### A.   Incorporation by Reference

Before turning to the adequacy of Plaintiff's pleadings, the Court addresses a threshold issue. Defendant requests that the Court incorporate by reference the following materials: (1) the Plan; (2) Plaintiff's deferred shares vesting schedule; and (3) Plaintiff's resignation letter. (Def.'s Moving Br. 5; Def.'s Reply Br. 3-5.) Plaintiff argues in opposition that Defendant's request requires

---

[5] As a federal court sitting in diversity, the Court applies New Jersey's substantive law. *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

the Court to convert the motion to dismiss into a motion for summary judgment and urges the Court to deny the motion since discovery is not complete, and thus a motion for summary judgment is not ripe. (Pl.'s Opp'n Br. 5-6.)

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). But the Court may consider such matters "without converting the motion [to dismiss] into one for summary judgment" when those matters are "integral to or explicitly relied upon in the complaint." *Id.* (alteration in original) (citation omitted). And, "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint," the exception to the general rule is even stronger. *Id.* (alterations in original) (citations omitted).

Here, the Court finds good cause to consider the Plan because the Complaint directly references specific provisions in the Plan (*see* Compl. ¶¶ 11, 17-18, 25-26, 29-30), and Plaintiff does not dispute the validity of the Plan (*see generally* Pl.'s Opp'n Br.); *see, e.g., Melone v. Cryoport Inc.*, No. 23-3243, 2024 WL 1743108, at *3 (D.N.J. Apr. 23, 2024) (considering the underlying contract in a breach of contract action). The Court similarly finds good cause to consider Plaintiff's deferred shares vesting schedule, as the Complaint references this schedule, and the deferred shares are directly at issue. (*See* Compl. ¶¶ 5, 12); *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them."). There is no good cause, however, to find that Plaintiff incorporated her resignation email message by reference in the Complaint. While the Complaint does allege that Plaintiff informed HSBC of her resignation, it does not indicate how or when, or even reference an email message. (*See* Compl.

¶¶ 7-9 (explaining that Plaintiff resigned and gave Defendant approximately three and one-half weeks' notice).)

### B. Breach of Contract Claim ("Count One")

Plaintiff alleges that HSBC is "in breach of contract for its failure to pay the . . . outstanding monies owed to [her]." (*Id.* ¶ 42.) Defendant argues that there was no breach of contract because it "complied with the unambiguous language of the Plan." (Def.'s Moving Br. 5-7.) Plaintiff argues in opposition that the contract provisions are ambiguous and when interpreted against the drafter, HSBC, the Complaint sufficiently pleads breach of contract. (Pl.'s Opp'n Br. 6-9.)

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege[:] (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)). Here, the parties do not dispute that the Plan is a valid contract. (*See generally* Def.'s Moving Br. 5-7; Pl.'s Opp'n Br. 6-9; Compl. ¶¶ 25-29.)

#### 1. Whether the Plan Is Ambiguous

"On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach. The Court must first determine whether the contractual language is ambiguous." *Galgano v. TD Bank, N.A.*, No. 20-5623, 2021 WL 2472331, at *3 (D.N.J. June 17, 2021) (citations omitted). "[W]hether a contract term is clear or ambiguous is a question of law for the court." *Bd. of Trs. of the Int'l Union of Operating Eng'rs Loc. 825 Pension Fund v. River Front Recycling Aggregate, LLC*, No. 15-8957, 2016 WL 6804869, at *5 (D.N.J. Nov. 16, 2016) (citation omitted). "A contract term is ambiguous if it is susceptible to reasonable alternative

6

interpretations." *Id.* (citation and quotations omitted). If a contract is found to be "ambiguous, then its precise meaning would be a question for the fact-finder to answer." *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. 08-3529, 2009 WL 2255727, at *7 (D.N.J. July 27, 2009) (citation omitted).

Here, Plaintiff maintains that "§ 5.2 [of the Plan] is vague and ambiguous." (Pl.'s Opp'n Br. 9.) But Plaintiff does not state which part of § 5.2 specifically is ambiguous and does not suggest an alternative meaning concerning how to interpret any purportedly ambiguous word or phrase. (*See id.* at 6-9.) Upon the Court's own review, without any guidance from Plaintiff, it does not find that § 5.2 of the Plan is ambiguous on its face. *See Pickholz v. TransparentBusiness, Inc.*, No. 22-2504, 2024 WL 489543, at *8 (D.N.J. Feb. 8, 2024) ("If a contract provision is unambiguous—i.e., can reasonably be read only one way—the court will interpret it as a matter of law." (citation omitted)).

### 2.  *Interpretation of the Plan*

Having found that the Plan is not ambiguous, the Court proceeds to interpret the Plan. Under the Plan, the general rule is that any unvested shares lapse "on the date the [p]articipant ceases to be an [e]mployee" unless "the [Good Leavers Provision] applies." (Ex. A, § 5.1.1.) Plaintiff alleges that the Good Leavers Provision does apply to her shares; specifically because §§ 5.2.1(iii) (the "Ceasing Provision") and 5.2.1(iv) (the "Undertaking Provision") apply.[6] (*See* Compl. ¶¶ 25, 26.) The relevant factual allegations in the Complaint are: (1) Plaintiff's last position at HSBC was as "Managing Director and Head of Compliance with retail, with . . . HSBC in the United States" (*id.* ¶ 3); (2) "HSBC reduced its retail business in the United States in the past few

---

[6] There are six possibilities where an employee is considered a Good Leaver. (*See* Ex. A, § 5.2(i)-(vi).) Four of the possibilities require the "satisfaction" or "approval" of the board of directors. (*See id.* § 5.2.1(i)-(ii), (v)-(vi).) As the Complaint contains no allegations that the directors approved Plaintiff's resignation (*see generally* Compl.), those four provisions do not apply to Plaintiff's resignation, and the Court does not address them.

7

years and there has been a significant reduction of . . . [P]laintiff's compliance team" (*id.* ¶ 6); (3) "the HSBC retail mass market business that [Plaintiff] supported was sold, and according to her supervisor . . . the company was creating a wholesale bank" (*id.* ¶ 23); and (4) "HSBC management made clear that there was no position in the United States for [Plaintiff]" (*id.* ¶ 24).

        a.       The Ceasing Provision (§ 5.2.1(iii))

The Ceasing Provision applies where "[Plaintiff's] employing company ceas[es] to be a Member of the Group."[7] (Ex. A, §5.2.1(iii).) Defendant argues that this provision does not apply because "Plaintiff does not plead that her employing company ceased to be an HSBC Subsidiary or any other company associated with HSBC." (Def.'s Moving Br. 6.)

In the Complaint, Plaintiff alleges that "the HSBC retail mass market business that [Plaintiff] supported was sold." (Compl. ¶ 23.) Plaintiff, however, does not plead what her "employing company" was, let alone whether this sale caused her employing company to cease to be a part of HSBC. (*See generally id.*) Plaintiff, therefore, has not provided sufficient factual allegations to sustain a breach of contract claim as to the Ceasing Provision.

        b.       The Undertaking Provision (§ 5.2.1(iv))

The Undertaking Provision applies where there is "a transfer of the undertaking, or the part of the undertaking, in which [Plaintiff] works to a person which is not a Member of the Group" (Ex. A, § 5.2.1(iv) (the "Undertaking Provision").) Here, Plaintiff does not plausibly allege that her undertaking was transferred out of the HSBC umbrella. (*See* Compl. ¶ 23.) The Complaint does not include any allegations about Plaintiff's "undertaking." Rather, it conclusorily asserts that "[b]y any reasonable interpretation of" the Good Leaver Provisions, Plaintiff "was a Good Leaver."

---

[7] "Member of the Group" is defined elsewhere in the contract as "(i) the Company; (ii) its Subsidiaries from time to time; and (iii) any other company which is associated with the Company and is so designated by the Directors." (Ex. A § 9.)

(*Id.* ¶ 29.) Without "further factual enhancement," the Court finds that Plaintiff's allegations pertaining to the Undertaking Provision are insufficient to sustain a breach of contract claim. *Twombly*, 556 U.S. at 557. The Court, accordingly, grants Defendant's motion to dismiss Count One.

      C.      **New Jersey Wage Payment Law ("Count Two")**

Plaintiff alleges that Defendant violated the WPL by refusing to pay her under the deferred compensation plan. (Compl. ¶¶ 44-48.) Defendant maintains that deferred shares are not wages under the WPL because they qualify as "supplementary incentives and bonuses." (Def.'s Moving Br. 7.) It also argues that the shares were not vested and therefore lapsed at the time of Plaintiff's resignation. (Def.'s Reply Br. 7-8.) Plaintiff asserts that the deferred shares "[are] the type of compensation which the statute was designed to protect."[8] (Pl.'s Opp'n Br. 10.)

"[T]he WPL 'governs the time and mode of payment of wages due to employees,' and is a remedial statute to be construed liberally." *Musker v. Suuchi, Inc.*, No. 089665, 2025 WL 825883, at *4 (N.J. Mar. 17, 2025) (quoting *Maia v. IEW Constr. Grp.*, 313 A.3d 887, 895 (N.J. 2024)); *see also* N.J. Stat. Ann. §§ 34:11-4.1 to -4.14. "The WPL is designed to protect an employee's wages and to assure timely and predictable payment." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 463 (N.J. 2015) (citing *Rosen v. Smith Barney, Inc.*, 925 A.2d 32, 37 (N.J. Super. Ct. App. Div. 2007)). An employer who "fails to pay the full amount of wages to an employee" may be subject to a civil suit to recover: (1) "the full amount of any wages due;" (2) "liquidated damages equal to not more than 200 percent of the wages . . . due;" and (3) "costs and reasonable attorney's fees as are allowed by the court." N.J. Stat. Ann. § 34:11-4.10(c).

---

[8] Defendant also argues that the Plan itself does not violate the WPL (Def.'s Moving Br. 7-9), but Plaintiff clarifies in her opposition brief that she "is not arguing that HSBC's deferred compensation plan as a whole violate[d] the [WPL]" (Pl.'s Opp'n Br. 11).

Under the WPL, wages are defined as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." *Id.* § 34:11-4.1(c); *see also Hargrove*, 106 A.3d at 457. Neither party has cited to a case that definitively addresses whether deferred shares are wages. Indeed, the exact delineation between wages under the WPL and other types of compensation has not been definitively determined by the New Jersey Supreme Court. *See Young v. iCreditWorks Inc.*, No. 24-2122, 2024 WL 5241243, at *4 (D.N.J. Dec. 27, 2024) (discussing a lack of applicable state authority).

When an issue "has not been addressed by the New Jersey Supreme Court, [the Court] must 'predict how the New Jersey Supreme Court would rule if presented with this case.'" *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 489 (3d Cir. 1991)). The Court accordingly looks to "analogous state court cases" and "may give serious consideration to the opinion of an intermediate appellate court." *Holmes*, 598 F.3d at 118 (citations omitted).

Here, the Court finds that Plaintiff's deferred shares are not wages under the WPL. The deferred shares are not "'direct monetary compensation' for 'labor or services' rendered by an employee" because they only vest after three years. *Musker*, 2025 WL 825883, at *5 (quoting N.J. Stat. Ann. § 34:11-4.1(c)). Under the WPL, "'wages' are payments promised in advance of the services performed and paid *promptly*, or at least intended to be paid promptly, after services are rendered." *Finkler v. Elsinore Shore Assocs.*, 725 F. Supp. 828, 832 (D.N.J. 1989) (emphasis added) (quoting 34 N.J. Stat. Ann. § 11-4.1 (1988) (noting that under the WPL, wages are to be paid "at least 'twice during each calendar month.'"); *cf. Martelet v. AVAX Techs., Inc.*, No. 09-

10

2925, 2012 WL 1570964, at *9 (E.D. Pa. May 3, 2012) (finding that an annual bonus constituted a wage under the WPL where it was payment promised in advance of services performed and paid promptly after plaintiff worked a full year for the company).

Rather, the Court finds that the deferred shares fall within the WPL's "supplementary incentives and bonuses" exclusion. *See* N.J. Stat. Ann. § 34:11-4.1(c). Under the WPL, "supplementary incentives and bonuses . . . are calculated independently of regular wages and paid in addition thereto." *Id.* "[A] 'supplementary incentive' is compensation that motivates employees to do something above and beyond their 'labor or services.'" *Musker*, 2025 WL 825883, at *5 (quoting N.J. Stat. Ann. § 34:11-4.1(c)). Here, the Plan states that "[t]he purpose of the Plan is to incentivise, reward and retain selected employees in a way which aligns their interests with those of shareholders." (Ex. A, *6.)[9] While "labels utilized by an employer do not necessarily dictate what compensation is or is not 'wages' under the [WPL]," *Musker v. Suuchi, Inc.*, 318 A.3d 692, 706 (N.J. Super. Ct. App. Div. 2024), *rev'd on other grounds*, No. 089665, 2025 WL 825883 (N.J. Mar. 17, 2025), the parties do not dispute the validity of the Plan, and the Court therefore finds this stated purpose persuasive. Considering the purpose of the Plan and the three-year vesting period, the Court finds that Plaintiff's deferred shares were intended as a supplemental incentive, and thus are statutorily excluded from the definition of wages under the WPL. For the foregoing reasons, Count Two is dismissed for failure to state a claim upon which relief can be granted.

### D.     Unjust Enrichment ("Count Three")

Defendant argues that Plaintiff's claim for unjust enrichment fails because at the motion to dismiss stage an unjust enrichment claim cannot survive where the parties do not dispute that a

---

[9] When referring to documents in the record, page numbers preceded by an asterisk indicate the page number appearing in the ECF header.

valid contract exists. (Def.'s Moving Br. 9-10.) Plaintiff argues in opposition that she is properly engaging in alternative pleading, which is allowed under the Rules. (Pl.'s Opp'n Br. 12-14.)

To state a claim for unjust enrichment under New Jersey law, Plaintiff must adequately allege that: (1) the "defendant received a benefit;" and (2) "that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994) (citation omitted). Unjust enrichment is a "quasi-contract" doctrine that requires a plaintiff to "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* (citation omitted). The parties' main dispute is whether a claim for unjust enrichment can properly survive a motion to dismiss where there is a valid contract.

Plaintiff claims that no New Jersey state case supports Defendant's position, and yet she has not cited a New Jersey state case where a court permitted both an unjust enrichment claim and a contract claim to proceed at the motion to dismiss stage.[10] (*See* Pl.'s Opp'n Br. 12-14.) While Plaintiff is correct that she may generally plead unjust enrichment in the alternative to a breach of contract claim, "[a] quasi-contract claim cannot exist when there is an *enforceable* agreement between parties." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008) (citing *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966)); *see also St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 158 A.2d

---

[10] Plaintiff spends much of her brief distinguishing Defendant's cases, and the Court recognizes that Plaintiff correctly states that *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169 (3d Cir. 2014), applies Pennsylvania law, which is not applicable here. (*See* Pl.'s Opp'n Br. 13.) Plaintiff, however, incorrectly states that unjust enrichment is not a "quasi-contract" outcome. (*Id.* at 13); *see, e.g., Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (noting that a claim for unjust enrichment is a "quasi-contract doctrine"); *Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law. Div. 1992) ("Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability."), *aff'd*, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994).

825, 828 (N.J. 1960) (explaining that "the essential requirement of unjust enrichment . . . does not appear" where "the [benefit] extended by plaintiff could be accepted by defendant simply as performance of the [existing contract]").

Here, Plaintiff only alleges that the benefit Defendant gained was "from the [P]laintiff's work and efforts," (Compl. ¶ 50), and that benefit is encapsulated in the employment agreement and the Plan (*Id.* ¶¶ 25-29). Plaintiff does not contest the validity of the contract (*see generally* Compl.) and even states that her unjust enrichment claim is based on the same allegations as her breach of contract claim. (Pl.'s Opp'n Br. 12 ("In Count Three, the [P]laintiff reiterates the above allegations and claims that this same conduct constitutes unjust enrichment.").) Count Three is therefore dismissed.

E.   **Promissory Estoppel ("Count Four")**

Defendant argues that the express contract precludes Plaintiff's promissory estoppel claim. (Def.'s Moving Br. 10-11.) Even if it did not, Defendant argues that Plaintiff has failed to plead the necessary elements of a promissory estoppel claim. (*Id.* at 11-12.) In opposition, Plaintiff only argues that she has sufficiently pled the elements of promissory estoppel. (Pl.'s Opp'n Br. 14-15.)

To sufficiently plead promissory estoppel, a plaintiff must adequately allege: "(1) a clear and definite promise; (2) made with the expectations that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (2008)). "[P]romissory estoppel generally serves as a stop-gap where no valid contract exists to enforce a party's promise." *Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, No. 14-3281, 2015 WL 1346240, at *5 (D.N.J. Mar. 25, 2015). "When an express contract exists, there must be a rescission of it before the parties will be remitted to the contract which the

law implies, in the absence of that agreement which they made for themselves." *Id.* (quoting *Moser v. Milner Hotels*, 78 A.2d 393, 394 (N.J. 1951)).

Here, as with unjust enrichment, Plaintiff does not contest the validity of the contract (*see generally* Compl.), and states that her promissory estoppel claim is based on the same allegations as her breach of contract claim. (Pl.'s Opp'n Br. 14 ("In Count Four, the [P]laintiff reiterates the above allegations and claims that this same conduct constitutes promissory estoppel.")); *see Smith v. Citimortgage, Inc.*, No. 15-7629, 2015 WL 12734793, at *8 (D.N.J. Dec. 22, 2015) (dismissing claims for unjust enrichment and promissory estoppel where they were "based on the same facts and theory as [plaintiffs'] contract claim"). The Court, accordingly, dismisses Count Four.

F.  **Fraudulent Misrepresentation ("Count Five")**

For her fraudulent misrepresentation claim, Plaintiff pleads that Defendant "knowingly made false statements about providing cash plan awards to [her], with the intent that the [P]laintiff would rely on those statements, and the [P]laintiff did rely upon them to her detriment." (Compl. ¶ 57.) Defendant argues that Plaintiff has not satisfied the heightened pleading standard required under Rule 9(b) for a fraud claim and, even if she did, Plaintiff has not adequately pled a material misrepresentation of an existing or past fact or reliance. (Def.'s Moving Br. 13-15.) Plaintiff argues in opposition that the Complaint does meet the strictures of Rule 9(b) and adequately pleads the elements of a fraudulent misrepresentation claim. (Pl.'s Opp'n Br. 16-18.)

"To state a claim for fraudulent misrepresentation . . . a plaintiff must show '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance . . . by the other person; and (5) resulting damages.'" *Sahoury v. Meredith Corp.*, No. 11-5180, 2012 WL 3185964, at *4 (D.N.J. Aug. 2, 2012) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J.

14

2005)). A "plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico*, 507 F.3d at 200 (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 9(b). To satisfy the Rule 9(b) standard, a plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citation omitted).

Here, Plaintiff fails to plead fraud with sufficient particularity to satisfy Rule 9(b). While the Complaint alleges that Defendant made misrepresentations at some time after Plaintiff informed Defendant of her resignation, Plaintiff fails to plead any specificity regarding the date, time, or place of the alleged misrepresentation. *See Trusted Transp. Sols., LLC v. Guarantee Ins. Co.*, No. 16-7094, 2018 WL 2926167, at *6 (D.N.J. June 11, 2018) (finding plaintiff failed to plead with particularity where the plaintiff "d[id] not specify the date of the alleged fraud"). As such, Plaintiff's pleadings lack sufficient precision to put Defendant on notice of its precise misconduct, and the Court, accordingly, dismisses Count Five.

### G.   Negligent Misrepresentation ("Count Six")

Defendant argues that Plaintiff's negligent misrepresentation claim should be dismissed because it is barred by the economic loss doctrine. (Def.'s Moving Br. 15-16.) Even if the economic loss doctrine does not apply, Defendant maintains that Plaintiff has not adequately pled reliance or proximate cause. (*Id.* at 16.) Plaintiff argues in opposition that the economic loss doctrine does not apply because the alleged misrepresentation was extraneous to the contract, and she has adequately pled a negligent misrepresentation claim. (Pl.'s Opp'n Br. 18-20.)

"Generally, the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by contract." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d

282, 308 (D.N.J. 2009) (citing *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 276 (N.J. 2002)). "[F]raud claims not extrinsic to underlying contract claims[, therefore,] are not maintainable as separate causes of action." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 144 (3d Cir. 2001). "For instance, a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *Arcand*, 673 F. Supp. 2d at 308 (citation omitted). A plaintiff may not proceed, however, with a negligent misrepresentation claim for "false promises to perform as contracted." *Cudjoe v. Ventures Tr. 2013I-H-R by MCM Capital Partners, LLP*, No. 18-10158, 2019 WL 949301, at *4 (D.N.J. Feb. 26, 2019) (quoting *Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 47 (3d Cir. 2015)).

Here, Plaintiff's allegations constitute false promises to perform as contracted, and therefore are barred by the economic interest doctrine. Plaintiff alleges that Defendant "made false statements about providing cash plan awards to the [P]laintiff without reasonable grounds for believing it to be true." (Compl. ¶ 60.) This allegation speaks directly to Defendant's performance under the Plan, and therefore Count Six is barred by the economic loss doctrine.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE