**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARY REINHOLD BROWN, | |
| Plaintiff, | Civil Action No. 24-8025 (MAS) (RLS) |
| v. | **MEMORANDUM OPINION** |
| HSBC, | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendant HSBC's ("Defendant") Motion to Dismiss (ECF No. 15) Plaintiff Mary Reinhold Brown's ("Plaintiff") First Amended Complaint ("FAC") (ECF No. 14). Plaintiff opposed (ECF No. 19) and Defendant replied (ECF No. 20). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendant's Motion to Dismiss.

I.      **BACKGROUND**[1]

A.      **Factual Background**

Plaintiff was employed by HSBC for ten years. (FAC ¶¶ 3-4, ECF No. 14.) As part of her compensation, she received deferred shares annually which vested over a three-year period and were governed by the HSBC Deferred Compensation Plan (the "Plan"). (*See id.* ¶¶ 5, 21.) Over Plaintiff's last few years of employment, HSBC reduced its retail business and significantly

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the FAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

reduced Plaintiff's compliance team. (*Id.* ¶ 6.) The HSBC retail mass market business that Plaintiff supported was sold, and according to her supervisor, the company was creating a wholesale bank. (*Id.* ¶ 7.) HSBC's management made clear that there was no position in the United States for Plaintiff. (*Id.* ¶ 8.) These changes to HSBC's United States business model left Plaintiff no choice but to seek alternate employment. (*Id.* ¶ 9.) Plaintiff, therefore, sought and obtained a new position outside of the company. (*Id.* ¶ 10.) Plaintiff provided Defendant approximately three and one-half weeks' notice regarding her departure. (*Id.* ¶ 11.) Plaintiff's manager approved her resignation and stated that she had left HSBC in good standing. (*Id.* ¶ 12.) When Plaintiff asked about her deferred shares, she was told by management that "since she left HSBC in good standing, her deferred shares would be untouched and remain with . . . Plaintiff." (*Id.* ¶ 13.)

Under the Plan, unless the "Good leavers" provision applies, "an [a]ward which has not [v]ested will lapse on the date the [p]articipant ceases to be an [e]mployee." (Ex. A to Heslin Certification, Plan § 5.1.1, ECF No. 15-2.)[2] An award of shares *will* vest with a participant who is no longer an employee if the Plan's "Good leavers" provision applies, which provides exceptions to the general rule for employees who leave under the following conditions:

---

[2] The Court notes at the outset that while neither party explicitly requests the Court incorporate by reference the Plan, the FAC and both parties' briefing directly reference specific provisions of the Plan. (*See* FAC ¶¶ 21-23; Def.'s Moving Br. 6; Pl.'s Opp'n Br. 9-10.) The Court, moreover, found good cause to consider the Plan in its previous Memorandum Opinion in this matter. *See Brown v. HSBC*, No. 24-8025, 2025 WL 947728, at *3 (D.N.J. Mar. 28, 2025). Here, again, the Court finds good cause to consider the Plan because the FAC directly references specific provisions contained within it (FAC ¶¶ 21-23), and Plaintiff does not dispute the validity of the Plan (*see generally* Pl.'s Opp'n Br.); *see, e.g., Melone v. Cryoport Inc.*, No. 23-3243, 2024 WL 1743108, at *3 (D.N.J. Apr. 23, 2024) (considering the underlying contract in a breach of contract action); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them.").

> (i) ill-health, injury or disability, as established to the satisfaction of the Directors;
>
> (ii) retirement with the agreement of the Participant's employer and approval of the Directors;
>
> (iii) the Participant's employing company ceasing to be a Member of the Group;
>
> (iv) a transfer of the undertaking, or the part of the undertaking, in which the Participant works to a person which is not a Member of the Group;
>
> (v) redundancy with the agreement of the Participant's employer and approval of the Directors; and
>
> (vi) any other reason, if the Directors so decide in any particular case.

(*Id.* § 5.2.1.)

To date, Plaintiff has not received the deferred shares. (FAC ¶ 30.) In her new position, Plaintiff's compensation has been "dramatically negatively impacted" and she is the "sole financial supporter of her family." (*Id.* ¶¶ 31-32.) Plaintiff alleges that she would have asked for additional compensation from her new employer to offset the loss of the shares had she known that HSBC was going to revoke them. (*Id.* ¶ 33.) Plaintiff accepted a lower paying position with another company based on HSBC's representations that she would be receiving her shares. (*Id.* ¶ 34.)

**B.    Procedural Background**

Plaintiff initially brought this case in the Superior Court of New Jersey on May 28, 2024 (Compl., ECF No. 1-1), and Defendant removed the case to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) The original Complaint asserted six causes of action against Defendant: (1) breach of contract ("Count One"); (2) violation of the New Jersey Wage Payment Law ("WPL") ("Count Two"); (3) unjust enrichment ("Count Three"); (4) promissory estoppel ("Count Four"); (5) fraudulent misrepresentation ("Count

Five"); and (6) negligent misrepresentation ("Count Six"). (*See generally* Compl.) Defendant subsequently moved to dismiss the Complaint, which the Court granted, and permitted Plaintiff to file an amended complaint within thirty days. (Mem. Op., ECF No. 12; Mem. Order, ECF No. 13.)

Plaintiff timely filed the operative FAC asserting three causes of action against Defendant: (1) Promissory Estoppel/Detrimental Reliance ("Count One"); (2) Breach of Contract ("Count Two"); and (3) Implied Covenant of Good Faith and Fair Dealing ("Count Three"). (*See generally* FAC.) Thereafter, Defendant filed the instant Motion to Dismiss. (Mot. to Dismiss, ECF No. 15; Def.'s Moving Br., ECF No. 15-1.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 19) and Defendant replied (Def.'s Reply Br., ECF No. 20).

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the

---

[3] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Defendant moves to dismiss with prejudice Plaintiff's FAC in its entirety. (*See generally* Def.'s Moving Br.) The Court addresses each argument in turn.

### A.    Promissory Estoppel/Detrimental Reliance

Defendant argues that the express terms of the Plan preclude Plaintiff's promissory estoppel claim. (Def.'s Moving Br. 7-9.) Defendant also contends that even if it did not, Plaintiff has failed to plead the necessary elements of a promissory estoppel claim because she has not adequately alleged that Defendant made a clear and definite promise prior to her resignation, and therefore there was no detrimental reliance. (*Id.* at 8-9.) In opposition, Plaintiff argues that she sufficiently pled the elements of promissory estoppel. (Pl.'s Opp'n Br. 6-10.)

To sufficiently plead promissory estoppel, a plaintiff must adequately allege: "(1) a clear and definite promise; (2) made with the expectation[] that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (2008)). "[P]romissory estoppel generally serves as a stop-gap where

no valid contract exists to enforce a party's promise." *Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, No. 14-3281, 2015 WL 1346240, at *5 (D.N.J. Mar. 25, 2015). "When an express contract exists, there must be a rescission of it before the parties will be remitted to the contract which the law implies, in the absence of that agreement which they made for themselves." *Id.* (quoting *Moser v. Milner Hotels*, 78 A.2d 393, 394 (N.J. 1951)).

Plaintiff fails to adequately plead a promissory estoppel/detrimental reliance claim because she pleads that there was an express contract between the parties that governed Plaintiff's resignation. (*See* FAC ¶¶ 21-22; *see generally* Plan); *see Kiss Elec.*, 2015 WL 1346240, at *5. Plaintiff does not argue that the Plan was invalid or rescinded. (*See generally* FAC; *see also* Pl.'s Opp'n Br.) Plaintiff instead argues that Section 5.2.1(vi) permitted management to make the promise she relied on. (FAC ¶¶ 21-22.) The Plan, however, expressly provides that if an employee is a "Good leaver[]" their shares will vest for "any other reason, *if the Directors so decide* in any particular case." (Plan § 5.2.1(vi) (emphasis added).) Plaintiff alleges that *management's* statement that her deferred shares would remain untouched was a clear and definite promise which is addressed by Section 5.2.1(vi) of the Plan. (Pl.'s Opp'n Br. 9.) The Plan says otherwise—it expressly states that the "Directors" not "management" may decide that an employee's shares are subject to vesting for "any other reason." (Plan § 5.2.1(vi).) Plaintiff makes no allegation that the Directors made such a decision. (*See generally* FAC.)

Plaintiff also fails to adequately allege either "reasonable reliance" or a "definite and substantial detriment." *Scagnelli*, 538 F. App'x at 194 (quoting *Toll Bros*, 944 A.2d at 19). Plaintiff alleges that she "sought and obtained a new position outside of the company" and "provided [Defendant] approximately three and one-half weeks['] notice." (FAC ¶¶ 10-11.) Plaintiff alleges that her manager then "approved her resignation and stated that she had left HSBC in good

standing[,]" and that "her deferred shares would be untouched and remain with" Plaintiff. (*Id.* ¶¶ 12-13.) Because Plaintiff alleges that she had resigned and accepted a new position *before* management made the alleged promises to her, Plaintiff fails to adequately plead either "reasonable reliance" or a "definite and substantial detriment." (*See* FAC ¶¶ 10-19); *see Scagnelli*, 538 F. App'x at 194 (quoting *Toll Bros*, 944 A.2d at 19). The Court therefore dismisses Count One of the Amended Complaint.

### B.    Breach of Contract

Plaintiff alleges that management's oral statement that she was a Good leaver and entitled to her unvested compensation creates an implied contract oral modification to the Plan, and that Defendant breached that modified agreement by failing to pay Plaintiff such compensation. (FAC ¶¶ 41-43; Pl.'s Opp'n Br. 10-13.) Defendant argues that pursuant to the Plan, only the "Directors" may decide that the shares will not lapse when other sections of the Good leavers exception do not apply, and that Plaintiff's breach of contract claim fails because Plaintiff has not alleged that the Directors made such a decision. (Def.'s Moving Br. 10-11.)

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege[:] (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)). As discussed in the promissory estoppel/detrimental reliance section above, however, the terms of the Plan are clear: only the *Directors* could decide that the shares would not lapse under the Good leavers provision of the Plan cited by Plaintiff, and Plaintiff has not alleged that the *Directors* did so. (Plan §§ 5.1.1, 5.2.1; *see* FAC ¶¶ 21-26.) Plaintiff, therefore, based on the express terms of the Plan, does not

7

adequately allege that Defendant breached the Plan. *Wientex Int'l Grp., Inc. v. Liz Claiborne, Inc.*, No. 04-3668, 2005 WL 7860933, at *3 (D.N.J. Oct. 7, 2005) (explaining that courts "must give . . . contract terms their 'plain and ordinary meaning'" and that when "the terms of the agreement are clear, the Court must enforce the contract as written" (citations omitted)).

"After forming a contract, the parties 'may by mutual assent, modify it.'" *Naughton v. County of Camden*, No. A-3175-21, 2024 WL 1629181, at *4 (N.J. Super. Ct. App. Div. Apr. 16, 2024) (quoting *County of Morris v. Fauver*, 707 A.2d 958, 967 (N.J. 1998)). Such a "modification is 'a change in one or more respects which introduces new elements into the details of a contract and cancels others but leaves the general purpose and effect undisturbed.'" *Id.* (quoting *Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n*, 999 A.2d 489, 497 (N.J. Super. Ct. App. Div. 2010)). A "modification can be proved by 'an explicit agreement to modify or by the actions and conduct of the parties as long as the intention to modify is mutual and clear.'" *Id.* (quoting *Wells Reit*, 999 A.2d at 497). "However, an agreement to modify a contract 'must be based upon new or additional consideration.'" *Id.* (quoting *Fauver*, 707 A.2d at 967). Here, Plaintiff does not allege any new or additional consideration for a modification of the Plan, only that management made an additional promise that she could keep her deferred shares. (*See generally* FAC.) Plaintiff therefore fails to allege a valid modification to the Plan for Defendant to breach. *See Naughton*, 2024 WL 1629181, at *4.

Plaintiff, accordingly, has failed to state a breach of contract claim and the Court will dismiss Count Two of the FAC.

## C.    Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's implied covenant of good faith and fair dealing claim fails because she does not allege that Defendant denied Plaintiff some benefit of the bargain under the

Plan. (Def.'s Moving Br. 12-13.) Plaintiff contends that Defendant's assurances that her shares would not be forfeited, coupled with the fact that her departure was a result of Defendant's restructuring, constitutes a breach of the implied covenant of good faith and fair dealing. (Pl.'s Opp'n Br. 13-16.)

"In New Jersey, '[e]very contract contains an implied covenant of good faith and fair dealing.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 348 (3d Cir. 2022) (quoting *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002) (alteration in original)). "The implied covenant prohibits either party from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997)). "To make out a claim for breach of the covenant, '[a] plaintiff must . . . [allege] the defendant's bad motive or intention.'" *Riachi v. Prometheus Grp.*, 822 F. App'x 138, 141-42 (3d Cir. 2020) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007)); *see also Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 287-90 (3d Cir. 2000) (finding no breach of the implied duty of good faith when plaintiffs only alleged a failure to complete the agreed-upon clean-up process and obtain DEP approval within a reasonable time, and failed to allege any misconduct or omissions in bad faith).

Here, as discussed above, the Plan laid out the terms of Plaintiff's deferred shares compensation, and only the Directors had the ability to permit a Good leaver to keep their shares for "any other reason." (*See generally* FAC.) Plaintiff, moreover, does not allege that the Directors decided she could keep her shares. (*See generally* FAC.) The FAC, further, does not adequately allege either bad faith or an attempt to induce Plaintiff to resign. (*Id.*) Nothing in the FAC, other than bald assertions, indicates such alleged bad faith. (*See id.*) The FAC, rather, indicates that: Defendant "reduced its retail business" over several years; there had been a significant

reduction of Plaintiff's compliance team; and the "retail mass market business that [P]laintiff supported was sold[.]" (*Id.* ¶¶ 6-7.) Taking Plaintiff's allegations as true, as the Court must, there is nothing in the FAC to indicate bad faith on Defendant's part; rather, the FAC alleges that Defendant restructured its business, and that someone in management incorrectly told Plaintiff that she could keep her shares contrary to the plain terms of the Plan. (*See id.* ¶¶ 5-36.) Count Three of the FAC is therefore dismissed.

### D.    Amendment

Defendant argues that amendment of the FAC would be futile because the unambiguous terms of the Plan show that Plaintiff's deferred shares lapsed. (Def.'s Moving Br. 13-14.) The Court agrees that the terms of the Plan are clear, and that Plaintiff's deferred shares have lapsed and therefore dismisses Plaintiff's Amended Complaint with prejudice. (*See* Plan § 5.1.1 (unless the "Good leavers" provision applies, "an [a]ward which has not [v]ested *will lapse* on the date the [p]articipant ceases to be an [e]mployee[,]"); *see also* Plan §5.2.1 (which as discussed above, does not apply here because the Directors did not decide that Plaintiff's shares would vest for "any other reason")); *Sud v. Ness USA, Inc.*, No. 21-12330, 2022 WL 1963711, at *8 (D.N.J. June 6, 2022) (denying leave to amend as futile on counts dismissed that were based on the clear terms of governing contracts).

### IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Defendant's Motion to Dismiss is granted, and the FAC is dismissed with prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: 12/12/25